IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

MELODY ABBOTT,

    Plaintiff,

v.                               CASE NO. 2:09-cv-00790

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.

### PROPOSED FINDINGS AND RECOMMENDATION

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's application for disability insurance benefits ("DIB") and supplemental security income ("SSI"), under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f. By standing order, this case was referred to this United States Magistrate Judge to consider the pleadings and evidence, and to submit proposed findings of fact and recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B).

Plaintiff, Melody Abbott (hereinafter referred to as "Claimant"), filed applications for SSI and DIB on April 6, 2007, alleging disability as of July 3, 2006, due to a back injury, high blood pressure, high cholesterol, tumor on the left ovary and depression. (Tr. at 110-113, 114-16, 151.) The claims were denied initially and upon reconsideration. (Tr. at 56-59, 68-70, 71-73.)

On November 28, 2007, Claimant requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. at 74-75.) The hearing was held on July 2, 2008, before the Honorable James P. Toschi. (Tr. at 20-51.) By decision dated September 11, 2008, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 8-19.) The ALJ's decision became the final decision of the Commissioner on May 14, 2009, when the Appeals Council denied Claimant's request for review. (Tr. at 1-3.) On July 8, 2009, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2008). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful

employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. Id. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2008). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because she has not engaged in substantial gainful activity since the alleged onset date. (Tr. at 10.) Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments of lumbosacral strain, obesity, major depressive disorder and panic disorder. (Tr. at 10.) At the third inquiry, the ALJ concluded that Claimant's impairments do not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 12.) The ALJ then found that Claimant has a residual functional capacity for light work, reduced by nonexertional limitations. (Tr. at 13.) As a result, Claimant cannot return to her past relevant work. (Tr. at 17.) Nevertheless, the ALJ concluded that Claimant could perform jobs such as mail clerk, warehouse order clerk, and rental clerk for storage facility, which exist in significant numbers in the national economy. (Tr. at 18.) On this basis, benefits were denied. (Tr. at 19.)

Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the

>     case before a jury, then there is 'substantial
>     evidence.'"

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner in this case is supported by substantial evidence.

Claimant's Background

Claimant was thirty-five years old at the time of the administrative hearing. (Tr. at 17.) Claimant completed the seventh grade. (Tr. at 25.) When asked if she could read and write, Claimant testified "[n]ot so much" and that she had been fired from a telemarketing job because of this. (Tr. at 27.) In the past, she worked at discount store as a cashier and stocker, at various fast food restaurants as a cashier and stocker, and as a telemarketer. (Tr. at 26-27.)

The Medical Record

The court has reviewed all evidence of record, including the medical evidence of record, and will discuss it further below as

5

necessary.

Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the Commissioner's decision is not supported by substantial evidence because (1) the ALJ failed to obtain a psychological consultative examination that included IQ testing; and (2) the ALJ erred in assessing Claimant's credibility. (Pl.'s Br. at 2-5.)

The Commissioner argues that (1) the ALJ adequately developed the record with respect to Claimant's mental health condition; and (2) the ALJ's credibility assessment is supported by substantial evidence. (Def.'s Br. at 9-13.)

The court notes that Claimant was referred for a consultative examination, although it did not include any psychometric testing, such as IQ. The undersigned proposes that the presiding District Judge find that the ALJ did not err in failing to refer Claimant for a consultative mental examination that included IQ testing.

In Cook v. Heckler, the Fourth Circuit noted that an ALJ has a "responsibility to help develop the evidence." Cook v. Heckler, 783 F.2d 1168, 1173 (4th Cir. 1986). The court stated that "[t]his circuit has held that the ALJ has a duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record, and cannot rely on evidence submitted by the claimant when that evidence is inadequate." Id. The court explained that the ALJ's failure to ask further questions and to

6

demand the production of further evidence about the claimant's arthritis claim, in order to determine if it met the requirements in the listings of impairments, amounted to a neglect of his duty to develop the evidence. Id.

Nevertheless, it is Claimant's responsibility to prove to the Commissioner that he or she is disabled. 20 C.F.R. §§ 404.1512(a) and 416.912(a) (2008). Thus, Claimant is responsible for providing medical evidence to the Commissioner showing that he or she has an impairment. Id. §§ 404.1512(c) and 416.912(c). In Bowen v. Yuckert, the Supreme Court noted:

> The severity regulation does not change the settled allocation of burdens of proof in disability proceedings. It is true . . . that the Secretary bears the burden of proof at step five . . . [b]ut the Secretary is required to bear this burden only if the sequential evaluation process proceeds to the fifth step. The claimant first must bear the burden . . . of showing that . . . he has a medically severe impairment or combination of impairments . . . . If the process ends at step two, the burden of proof never shifts to the Secretary. . . . It is not unreasonable to require the claimant, who is in a better position to provide information about his own medical condition, to do so.

Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Although the ALJ has a duty to fully and fairly develop the record, he is not required to act as plaintiff's counsel. Clark v. Shalala, 28 F.3d 828, 830-31 (8th Cir. 1994). Claimant bears the burden of establishing a prima facie entitlement to benefits. See Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); 42 U.S.C.A.

§ 423(d)(5)(A)("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require.")  Similarly, he or she "bears the risk of non-persuasion." Seacrist v. Weinberger, 538 F.2d 1054, 1056 (4th Cir. 1976).

Regarding the ALJ's duty to refer a claimant for a consultative examination, 20 C.F.R. §§ 404.1517 and 416.917 (2008) provide that

> [i]f your medical sources cannot or will not give us sufficient medical evidence about your impairment for us to determine whether you are disabled or blind, we may ask you to have one or more physical or mental examinations or tests.

On May 30, 2007, Kelly Robinson, M.A. examined Claimant at the request of the State disability determination service and noted that Claimant was in regular education classes and received average to below average grades.  Claimant dropped out of school in the seventh grade because she "didn't have enough grades and ... that's when I was raped."  (Tr. at 367.)  Ms. Robinson observed that in Claimant's previous job as a fast food worker, she was required to read the menu.  (Tr. at 368.)  Ms. Robinson diagnosed major depressive disorder, recurrent, severe without psychotic features, on Axis I and panic disorder without agoraphobia on Axis II.  (Tr. at 369.)  Her report makes no mention of significant limitations in intellectual functioning or the need for IQ testing.  (Tr. at

8

369.)  Claimant reported to Roger C. Baisas, M.D., who conducted a consultative physical examination, that she was a dropout and "'can hardly read and write, but I'm able to vote [i]n elections.'"  (Tr. at 377.)  A State agency medical source completed a Psychiatric Review Technique form on June 12, 2007, and opined that Claimant's mental impairments (depression and anxiety) were not severe.  (Tr. at 381-94.)

The ALJ called a medical expert to testify at the administrative hearing about Claimant's mental impairments.  Dr. Jeffrey Boggess opined that Claimant had the limitations found by the ALJ.  (Tr. at 40-41.)  Regarding Claimant's level of intellectual functioning, he also stated: "I don't know what her IQ is.  She is limited.  I would say it would probably need to be limited to simple instructions."  (Tr. at 40.)

The evidence of record related to Claimant's mental condition, including her level of intellectual functioning, was adequate and complete enough for the ALJ to make an informed decision.  Claimant had received no recent ongoing mental health treatment.  Claimant was referred for a consultative mental examination, and a medical expert testified at the administrative hearing.  No medical source of record suggested the need for such testing or significant limitations related to Claimant's level of intellectual functioning.  Notably, the evidence of record indicates that despite her limited education, Claimant was able to work as a

cashier. In addition, as the Commissioner points out, Claimant did not seek such testing.

The ALJ found in his decision that Claimant suffered from severe mental impairments, including major depressive disorder and panic disorder. (Tr. at 10.) The ALJ determined that these impairments affected Claimant's residual functional capacity insofar as she was limited to understanding, remembering and carrying out simple instructions and tasks only, that she could have only occasional contact with the public and that she could have no more than a moderate level of stress. (Tr. at 13.) In making this finding, the ALJ relied on substantial evidence of record.

In any event, the ALJ, based on the testimony of Dr. Boggess, limited Claimant to jobs that required Claimant to understand, remember and carry out only simple instructions and tasks involving only occasional contact with the public and no more than a moderate stress level. Such limitations are supported by substantial evidence of record and adequately reflect any limitation in Claimant's intellectual functioning. Thus, the court proposes that the presiding District Judge find that the ALJ did not err in failing to order a consultative mental examination that included IQ testing.

Next, the court proposes that the presiding District Judge find that the ALJ's pain and credibility findings are consistent

with the applicable regulations, case law and social security ruling ("SSR") and are supported by substantial evidence. 20 C.F.R. §§ 404.1529(b) and 416.929(b) (2008); SSR 96-7p, 1996 WL 374186 (July 2, 1996); Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996). The ALJ first found that Claimant's medically determinable impairments could reasonably be expected to produced her alleged symptoms. (Tr. at 14.) The ALJ proceeded to the second step in the pain analysis, and his decision contains a thorough consideration of Claimant's daily activities, the location, duration, frequency, and intensity of Claimant's pain, precipitating and aggravating factors and Claimant's medication. (Tr. at 14-16.)

The ALJ determined that Claimant's subjective complaints of limited education, depression, mood swings, anxiety attacks and back pain lacked credibility "to the extent they are inconsistent with the residual functional capacity for the reasons explained below." (Tr. at 14.) The ALJ relied on the objective medical evidence of record, which generally indicated that Claimant had only lumbar strain and was recommended to undergo only conservative treatment. The ALJ noted that one physician who treated Claimant, R. M. Bellam, M.D., instructed Claimant to increase her exercise. (Tr. at 500.) Regarding Claimant's mental impairments, the ALJ observed that although Claimant testified she was taking medication for depression and anxiety, the medication list she submitted does

11

not reflect this. (Tr. at 35, 211.) In addition, Claimant was not undergoing continuous treatment by a psychologist or psychiatrist and recent records from Dr. Bellam do not suggest a diagnosis of a psychological condition. (Tr. at 496-500.)

The ALJ further relied on Claimant's activities of daily living, including that she takes her children to school, watches television, eats, cooks, washes dishes, showers and goes to bed. (Tr. at 16.) The ALJ concluded that Claimant was maintained with conservative and apparently minimal medical treatment and that in fact, she had not pursued all recommended treatment (physical therapy). Finally, while Claimant testified that her medications make her feel sleepy and drowsy, she did not state this on a written questionnaire. (Tr. at 16, 190.)

The ALJ's findings about Claimant's credibility are supported by substantial evidence, and the court proposes that the presiding District Judge so find.

For the reasons set forth above, it is hereby respectfully RECOMMENDED that the presiding District Judge AFFIRM the final decision of the Commissioner and DISMISS this matter from the court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby FILED, and a copy will be submitted to the Honorable Thomas E. Johnston, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section

636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, Judge Johnston, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to transmit a copy of the same to counsel of record.

    May 27, 2010
        Date

Mary E. Stanley
United States Magistrate Judge